**IN THE UNITED STATES DISTRICT COURT FOR THE FOR THE EASTERN DISTRICT OF LOUISIANA**

ERIC F. CAPDEVILLE,                                    CASE NO.
on behalf of himself and all
others similarly situated

                                                       SECTION:

Plaintiff,

v.

SOUTHWEST AIRLINES CO.,                        **JURY TRIAL DEMANDED**

Defendant.

_____/

## CLASS ACTION COMPLAINT

Plaintiff, ERIC F. CAPDEVILLE ("Capdeville" or "Plaintiff"), on behalf of himself and all others similarly situated, by and through undersigned counsel, files this Class Action Complaint against Southwest Airlines Co ("Southwest" or "Defendant"), and alleges the following:

### INTRODUCTION

1.      Southwest Airlines Company ("Southwest") became the nation's largest domestic air carrier in 2003 and maintains that ranking based on the U.S. Department of Transportation's most recent reporting of domestic originating passengers boarded.

2.      In its 49th year of service, Dallas-based Southwest serviced over 130 million passengers annually.

3.      In peak travel seasons, Southwest operates more than 4,000 weekday departures among a network of 102 destinations in the United States and 10 additional countries.

4.     Southwest does not sell airline tickets on any third-party global distribution platform, requiring all customers to purchase directly from Southwest whether it be through its website or by calling a Southwest booking line to make a reservation.

**System Failures Impacts on Southwest's Operations**

5.     Beginning Friday, December 23, 2022, Southwest Airlines began cancelling flights nationwide blaming the failure on a weather-driven issue.  Subsequently, Southwest continued to cancel flights blaming weather through Wednesday, December 28, 2022 resulting in more than 14,500 flights cancelled since the prior Friday.  Wednesday, December 28, 2022 alone Southwest cancelled 2500 flights.  Southwest CEO Bob Jordan confirmed the airline needed to upgrade its legacy systems.  The Department of Transportation also confirmed that the cancellations came about as a result of Southwest's decision and actions.

6.     Southwest's response to the internally created crisis was to suggest customers could submit receipts for flight cancellations from December 24, 2022 through January 2, 2023 for consideration reimbursement.

7.     Southwest's Contract of Carriage mandates refunds in this situation as well as full compensation for incurred costs and resultant cancellations for the failure of the carriage contract.

8.     Southwest's failure to provide prompt refunds for canceled flights violates not only its own Contract of Carriage, but also federal law.

## PARTIES, JURISDICTION, AND VENUE

9.      ERIC F. CAPDEVILLE is a Louisiana citizen who resides in Marrero, Louisiana, Parish of Jefferson.

10.      Defendant is a Texas for-profit corporation having its principal place of business in Dallas, Texas.

11.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, there are more than 100 putative class members, and minimal diversity exists because many putative class members are citizens of a different state than Defendant.

12.      Venue is proper in this Court pursuant to 28 U.S.C. §1391, because this is the judicial district in which a substantial part of the events giving rise to the claims asserted herein occurred.

## GENERAL ALLEGATIONS

13.      On or about October 10, 2022, Plaintiff purchased two tickets for travel Tuesday, December 27, 2022 from New Orleans, Louisiana (MSY) to Portland, Oregan (PDX) for himself and his daughter, which included a connecting flight to Pheonix, Arizona (PHX) (the "Trip") through Southwest Airlines.

14.      Prior to departing Plaintiff checked saw the news that thousands of flights had been cancelled by Southwest Airlines.  Upon checking, he confirmed that his Southwest flight had been cancelled and hos reservations and stay in Portland would be lost without reimbursement.

15.     After speaking to customer service Capdeville confirmed that in fact Plaintiff's flights had been canceled.

16.     Despite the fact that Plaintiff could not take the flight he booked, and Defendant could not offer any comparable accommodations on another flight, Plaintiff was not given a refund, but was only offered a credit for use on a future flight.

17.     Every Southwest passenger air travel ticket incorporates by reference (including in some cases by hyperlink) and is governed by Southwest's Contract of Carriage.  Southwest drafted the Contract of Carriage.

18.     Section 9 of the Contract of Carriage governs in a situation where the Carrier cancels a flight, as was the case for Plaintiff and other Class members. Specifically, with respect to Service Interruptions, the Contract of Carriage states:

a. Failure to Operate as Scheduled

   (1) Canceled Flights or Irregular Operations. In the event Carrier cancels or fails to operate any flight according to Carrier's published schedule, or changes the schedule of any flight, Carrier will, at the request of a Passenger with a confirmed Ticket on such flight, take one of the following actions:

      (i) Transport the Passenger at no additional charge on Carrier's next flight(s) on which space is available to the Passenger's intended destination, in accordance with Carrier's established reaccommodation practices; or

      (ii) Refund the unused portion of the Passenger's fare in accordance with Section 4c.

19.     Section 4(c)(4) specifies that the refused for the "unused transportation" must be "in accordance with the form of payment utilized for the Ticket."

20.     Further, under Southwest's Customer Service Commitment and 14 C.F.R. § 259.5, which are both incorporated into the Contract of Carriage, Southwest reiterates that "in the event a flight is delayed, canceled, or diverted" by Southwest, the airline will provide one of two options to customers: (1) rebooking on the next available Southwest flight(s) with seats available to the customer's ticketed destination, or (2) a "refund of the unused portion of your Southwest ticket."

21.     Both Section 9 of the Contract of Carriage and paragraph 12 of the Customer Service Commitment clearly provide for either rebooking or a refund in the event that Southwest cancels a flight. Neither provision provides for any "credit" for use on a future Southwest flight.

22.     Paragraph 5 of the Customer Service Commitment further provides that refunds are to be issued within seven business days from the date of a refund request for tickets purchased with a credit card, and within 20 days of a refund request for tickets purchased with cash.

23.     Plaintiff was not given the choice of being transported on the next available flight at no additional charge. His flight was canceled and there were no alternative Southwest flights to accommodate him from the Trip's origin to his destination. He had not used any portion of the ticket for his Trip. Thus, pursuant to the terms of the Contract of Carriage, Plaintiff is entitled to a refund of the fare for the entire Trip in U.S. Dollars to his original form of payment.

## CLASS ACTION ALLEGATIONS

24.     Pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2) and (b)(3), as applicable, Plaintiff seeks certification of the following nationwide class (the "Class"):

All persons in the United States who purchased tickets for travel on a Southwest Airlines flight scheduled to operate from December 24, 2022 through the date of a class certification

order, whose flight(s) were canceled by Southwest, and who were not provided a refund and reimbursed for incurred expenses as a result of the cancellation.

25.     Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff, and any Judge sitting in the presiding court system who may hear an appeal of any judgment entered.

26.     Plaintiff reserves the right to amend or modify the Class definition with greater specificity or division after having had an opportunity to conduct discovery.

27.     The Class meets the criteria for certification under Rule 23(a), (b)(1), (b)(2), (b)(3) and (c)(4).

28.     **Risk of Inconsistent or Varying Adjudications. Fed. R. Civ. P. 23(b)(1).** As the proposed class members include thousands of persons across all 50 states, there is significant risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the Defendant. For example, declaratory relief may be entered in multiple cases, but the ordered relief may vary, causing the Defendant to have to choose the court order with which it will comply.

29.     **Numerosity. Fed. R. Civ. P. 23(a)(1).** Consistent with Rule 23(a)(1), the members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical. While the exact number of class members is unknown to Plaintiff at this time, it is believed that the Class is comprised of tens of thousands if not hundreds of thousands of members geographically dispersed throughout the United States. Affected consumer's names and addresses

are available from Southwest's records, and class members may be notified of the pendency of this action by recognized, court-approved notice dissemination methods, which may include electronic mail, U.S. Mail, internet notice, and/or published notice.

30.     **Predominance of Common Issues. Fed. R. Civ. P. 23(a)(2) and (b)(3).** Consistent with Rule 23(a)(2) and with 23(b)(3)'s predominance requirement, this action involves common questions of law and fact that predominate over any questions affecting individual class members. The common questions include:

a.   Whether Defendant's conduct breaches its Contract of Carriage;

b.   Whether Defendant is required to give a refund and reimburse all related expenses as a result of the cancellations, rather than credit on a future flight when it cancels a flight and cannot reaccommodate the passengers within a reasonable time of the original flight schedule;

c.   Whether Plaintiff and members of the Class are entitled to damages, costs, or attorneys' fees from Defendant; and

d.   Whether Plaintiff and members of the Class are entitled to compensatory damages.

31.     **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of other Class members' claims because Plaintiff and Class members were subjected to the same unlawful conduct and damaged in the same way. Defendant's conduct that gave rise to the claims of Plaintiff and other Class members (i.e., canceling flights without giving refunds in breach of the Contract of Carriage) is the same for all Class members.

32.     **Adequacy. Fed. R. Civ. P. 23(a)(4).** Consistent with Rule 23(a)(4), Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class and is committed to pursuing this matter against Defendant to obtain relief for the Class. Plaintiff has no conflicts of interest with the Class. Plaintiff's counsel are competent and experienced in litigating class actions, including extensive experience in litigating consumer claims. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the interests of the Class.

33.     **Superiority. Fed. R. Civ. P. 23(b)(3).** Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual plaintiffs and class members may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiff and the Class members are relatively small compared to the burden and expense required to individually litigate their claims against Defendant, and thus, individual litigation to redress Defendant's wrongful conduct would be impracticable. Individual litigation by each Class member would also strain the court system. Moreover, individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

34.     **Declaratory Relief.** Class certification is also appropriate under Rule 23(b)(2) and (c). Defendant, through its uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a

whole. Moreover, Defendant continues to offer credits instead of refunds to Plaintiff and Class members for flights that they cancel, thus making declaratory relief a live issue and appropriate to the Class as a whole.

### COUNT I - BREACH OF CONTRACT

35.    Plaintiff realleges and reincorporates its allegations in paragraphs 1 through 34 above as if fully set forth herein.

36.    This claim for breach of contract damages or, in the alternative, specific performance of the contract's refund terms, is based on Defendant's breaches of its Contract of Carriage, including its Customer Service Commitment (the "Contract").

37.    Plaintiff, along with all putative class members, entered into a Contract with Defendant for provision of air travel in exchange for payment. This Contract was drafted by Defendant.

38.    Plaintiff, and all putative class members performed under the Contract, specifically, by tendering payment for the airline tickets to Defendant and complied with all conditions precedent under the Contract.

39.    Due to Defendant's cancellation of their flights, Plaintiff, and all putative class members cannot use their airline tickets through no fault of their own and they are not getting the benefit of their bargain with Defendant.

40.    Under the terms of the Contract of Carriage drafted by Defendant, Plaintiff and putative class members are entitled to refunds because Southwest canceled their flights and did

not rebook the customers on another flight.  By failing to provide refunds, Southwest has breached its Contract of Carriage.

41.    Southwest has further breached its Contract of Carriage by failing to provide refunds within seven days for canceled tickets purchased with credit cards.

42.    As a result of Defendant's breaches of contract, Plaintiff and the putative class members have incurred damages in an amount to be proven at trial.

## COUNT II - REDHIBITION

43.    Plaintiff realleges and reincorporates its allegations in paragraphs 1 through 42 above as if fully set forth herein.

44.    This claim for Redhibition under Louisiana Civil Code Article 2520, et seq. is also based on Defendant's breaches of its Contract of Carriage.

45.    Under the law of Redhibition, Southwest is liable for return of the price of the ticket when it was paid plus interest from the time paid, the reimbursement of reasonable expenses occasioned by the sale and also for damages and attorney fees.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all putative Class members, respectfully requests that the Court enter judgment in their favor and against Defendant as follows:

1. For an Order determining at the earliest possible time that this matter may proceed as a class action under Rule 23 and certifying this case as such;

3. For himself and each Class member their actual compensatory damages, or in the alternative, for specific performance of the refund provisions of the Contract of Carriage;

4. For reasonable attorneys' fees and costs of suit;

5. For pre-judgment interest and interest pursuant to redhibition; and

6. Such further and other relief the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff, on behalf of himself and the Class of all others similarly situated, hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: December 30, 2022

Respectfully Submitted:

**JIM S. HALL & ASSOCIATES**, LLC.

_/s/ Matthew B. Moreland_

**JIM S. HALL (Bar No.: 21644)**
Jodi@jimshall.com
**MATTHEW B. MORELAND** (#24567)
Mmoreland@jimshall.com
800 N. Causeway Blvd., Suite #100
Metairie, Louisiana 70001
Telephone: 504-832-3000
Facsimile: 504-832-1799

*Counsel for Plaintiff and the Proposed Class*