UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ERIC F. CAPDEVILLE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-5590** |
| **SOUTHWEST AIRLINES CO.** | **SECTION "B"(4)** |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Eric Capdeville brought this putative nationwide class action against Southwest Airlines after Southwest experienced a significant disruption in operations in December 2022, which resulted in thousands of canceled flights. According to Capdeville, he purchased two tickets for travel during this disruption, and his flights were cancelled. He contends that Southwest owes him a refund back to the form of payment instead of the credit toward future travel that he alleges Southwest provided instead. On that basis, Capdeville asserts two claims on behalf of himself and the putative nationwide class, one for breach of contract and the other for redhibition under Louisiana law. For his redhibition claim, Capdeville also seeks reimbursement of expenses incurred because of the cancellation.

The Court should dismiss both of Capdeville's claims. First, he fails to allege sufficient facts to state a plausible claim for breach of contract. The Contract of Carriage expressly allows Southwest to issue a flight credit upon the cancellation of a flight. Capdeville claims that Southwest breached the Contract of Carriage by providing him a flight credit instead of a refund[1] for his cancelled flight. The Contract of Carriage, however, allows Southwest to do exactly that. Only when a customer requests a refund following a flight cancellation is Southwest even arguably

---

[1] In the context of this motion, "refund" means a refund back to the form of payment. Although payment is often by credit or debit card, sometimes a flight credit or other form of payment is used.

obligated to provide one. Capdeville makes no allegation that he requested or was denied a refund for his cancelled flight.

Second, Capdeville's redhibition claim is preempted by the Airline Deregulation Act of 1978 (ADA), 49 U.S.C. § 41713, because it (1) relates to Southwest's prices, routes, and services, and (2) seeks to enlarge the contractual obligations in the Contract of Carriage. Even if not preempted, the claim would still fail because the Contract of Carriage includes a choice-of-law provision requiring application of Texas law, which does not recognize a claim for redhibition. And even if Louisiana law applied instead of Texas law, Capdeville fails to state a redhibition claim because the underlying transaction was not a contract of sale under the Louisiana Civil Code.

In short, Capdeville has failed to state any viable claim against Southwest, and his complaint should therefore be dismissed.

## BACKGROUND

On October 10, 2022, Capdeville bought two tickets for a flight on Southwest Airlines departing on December 27, 2022.[2] Southwest experienced a significant disruption in its operations in late December 2022, leading Southwest to cancel thousands of flights. Shortly before his scheduled departure, Capdeville learned that his flight was among those cancelled and that there were no alternative flights available to accommodate him. As a result, Capdeville was unable to reach his destination in Portland, Oregon, and reservations for his stay in Portland were lost without reimbursement.[3]

Capdeville alleges that, after cancelling his flight, Southwest offered him only a credit towards a future flight rather than a refund in U.S. dollars.[4] According to Capdeville, Southwest's

---

[2] Complaint ¶ 13 (ECF No. 1, at 3).

[3] *Id.* ¶¶ 14–15 (ECF No. 1, at 3–4).

[4] *Id.* ¶ 16 (ECF No. 1, at 4).

Contract of Carriage, which is incorporated by reference in every ticket and governs the rights and obligations between Southwest and its customers, required Southwest to provide him with a refund.[5] Specifically, Capdeville relies on Section 9(a)(1), which provides that in the event of a cancellation, Southwest will, *at the request of the passenger*, either transport the passenger on the next available flight or, *following a request*, refund the unused portion of the fare in accordance with Section 4(c).[6]

Capdeville does not allege that he requested a refund; instead, he filed suit against Southwest three days after his flight was canceled, asserting two claims on behalf of himself and a putative nationwide class of similarly situated Southwest customers.[7] First, Capdeville asserts a claim for breach of contract, alleging that Southwest breached the Contract of Carriage by failing to provide him with a refund for his canceled flight.[8] As a result of this alleged breach, Capdeville seeks damages or, alternatively, specific performance of the refund provisions in the Contract of Carriage.[9] Second, Capdeville asserts a claim for redhibition under Louisiana law based on Southwest's alleged breach of the Contract of Carriage.[10] For the redhibition claim, Capdeville seeks return of the ticket price with interest, reimbursement of expenses occasioned by the sale, other damages, and attorneys' fees.[11]

---

[5] Complaint ¶¶ 17, 40 (ECF No. 1, at 4, 9–10).

[6] *Id.* ¶ 18 (ECF No. 1, at 4); *see also* **Ex. A**, Contract of Carriage § 9(a)(1), at 50.

[7] Complaint ¶ 24 (ECF No. 1, at 5).

[8] *Id.* ¶¶ 36–42 (ECF No. 1, at 9–10).

[9] *See id.* (ECF No. 1, at 10–11).

[10] *Id.* ¶¶ 44–45 (ECF No. 1, at 10).

[11] *Id.* ¶ 45 (ECF No. 1, at 10).

**LEGAL STANDARD**

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). At a minimum, the complaint must include enough well-pleaded, nonconclusory factual allegations to raise a reasonable expectation that the plaintiff will be able to present evidence of each element of the claim. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009). Although courts must accept all "well-pleaded facts" as true, that presumption does not apply to labels, conclusions, or formulaic recitals of a claim's elements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A court is typically confined to the four corners of the complaint in deciding a motion to dismiss. "When a defendant attaches documents to its motion that are referred to in the complaint and are central to the plaintiff's claims," however, "the court may also properly consider those documents." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). Here, Southwest's Contract of Carriage is central to Capdeville's claims and quoted throughout.[12] The Court may therefore consider the terms of the Contract of Carriage in effect when Capdeville bought his ticket, which Southwest attaches here. *See, e.g.*, *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (considering contracts referenced in complaints); *Hughes v. Sw. Airlines Co.*, 409 F. Supp. 3d 653, 655 n.1 (N.D. Ill. 2019) (considering contract of carriage governing the plaintiff's claims), *aff'd*, 961 F.3d 986 (7th Cir. 2020).[13]

---

[12] Complaint ¶¶ 7–8, 17–21, 23, 30–31, 36–41 (ECF No. 1, at 2, 4–5, 7, 9–11). In fact, Capdeville concedes that his ticket "incorporates . . . and is governed by Southwest's Contract of Carriage," and he says that his claim for breach of contract "is based on" an alleged breach of the Contract of Carriage. *Id.* ¶¶ 17, 36 (ECF No. 1, at 4, 9).

[13] Capdeville also relies on Southwest's Customer Service Plan, which he refers to as the "Customer Service Commitment." *Id.* ¶¶ 20–22, 36 (ECF No. 1, at 5, 9). For the Court's reference, Southwest has attached a copy of the Customer Service Plan in effect when Capdeville bought his ticket. *See* **Ex. B**, Customer Service Plan. The Customer Service Plan reflects Southwest's dedication to high-quality customer service "but is not a contract and does not create any contractual obligations on the part of [Southwest]." *Id.* at 1; **Ex. A**, Contract of Carriage § 10(b)(1), at 54.

# ARGUMENT

The facts alleged by Capdeville fail to show that Southwest breached any contractual terms. Further, the ADA expressly preempts the redhibition claim. Moreover, Texas law, which applies under the Contract, does not recognize a redhibition claim. Finally, the transaction at issue falls outside the scope of redhibition as a matter of law. The Court should therefore grant this motion and dismiss both of Capdeville's claims.

### A. Capdeville fails to state a plausible claim for breach of contract (Count I).

At base, Capdeville alleges only three facts to support his breach of contract claim: (1) his Southwest flight was cancelled, (2) he received a flight credit, and (3) he did not receive a refund back to the form of payment. Those facts alone are insufficient to establish a plausible breach of contract. In short, a party cannot breach a duty it does not have, and Southwest had no duty to provide a refund under the facts alleged because a condition precedent has not been met.

A party seeking to recover under a contract "bears the burden of proving that all conditions precedent have been satisfied." *MDK Sociedad De Responsabilidad Limitada v. Proplant Inc.*, 25 F.4th 360, 369 (5th Cir. 2022). "A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation." *Id.* To determine the existence of such condition, courts examine the entire contract, looking for "conditional language such as 'if,' 'provided that,' or 'on condition that.'" *Arbor Windsor Ct., Ltd. v. Weekley Homes, LP*, 463 S.W.3d 131, 137 (Tex. App. 2015).[14] But the contract need not include any "magic words." *Id.* at 139. The question is simply whether the contract, as a whole, evinces an intent for an act or event to occur before a party has the right to demand performance of an obligation. *See id.*

---

[14] As discussed in greater detail in Section B.2, *infra*, the parties agreed by contract that Texas law applies to any claims related to Capdeville's purchase of a ticket on Southwest.

5

Capdeville asserts that "Section 9 of the Contract of Carriage governs in the situations where the Carrier cancels a flight."[15] He then claims that Southwest breached the Contract of Carriage "[b]y failing to provide refunds" following a cancellation.[16] The Contract of Carriage does not, however, mandate the immediate issuance of refunds following a cancellation. Just the opposite. In Section 4(c)(6), the Contract of Carriage expressly allows Southwest, in its discretion, to provide flight credits in instances of significant delays or involuntary cancellations regardless of ticket type.[17]

To obtain a refund instead of the default flight credit, the plain language of the Contract of Carriage requires a "request" by the customer as a condition precedent. This is clear in two parts of Section 9(a)(1):[18]

> In the event the Carrier cancels or fails to operate any flight according to Southwest Airlines published schedule, or significantly changes the schedule of any flight, or there is a significant delay, Carrier will, ***at the request of a Passenger*** with a confirmed Ticket on such flight, take one of the following actions:
>
> (i) Transport the Passenger at no additional charge on Southwest Airlines next flight(s) on which space is available to the Passenger's intended destination, in accordance with Southwest Airlines established re-accommodation practices; or
>
> (ii) ***Following a request by the Customer***, refund the unused portion of the Customer's fare in accordance with Section 4.c.[19]

Capdeville's complaint quotes Section 9, including the "at the request of a Passenger" language, but omits the "Following a request of a Customer" language in Section 9(a)(1)(ii), which

---

[15] Complaint ¶ 18 (ECF No. 1, at 4).

[16] *Id.* ¶ 40 (ECF No. 1, at 10).

[17] **Ex. A**, Contract of Carriage § 4(c)(6), at 21.

[18] Complaint ¶ 18 (ECF No. 1, at 4) ("Section 9 of the Contract of Carriage governs in the situations where the Carrier cancels a flight . . . ."); *see also id.* ¶ 21 (ECF No. 1, at 5) (referring to purported obligations in Section 9).

[19] **Ex. A**, Contract of Carriage § 9(a)(1), at 50 (emphasis added).

4892-6238-4479 v3

makes clear that Southwest need not provide a refund until after a customer requests one.[20] Because the Contract allows Southwest to provide a flight credit following a cancellation, and because Capdeville does not allege that he requested a refund from Southwest, Capdeville fails to state a claim for breach of contract.[21]

> **B.    Capdeville fails to state a claim for redhibition under Louisiana law (Count II).**

Capdeville's redhibition claim should also be dismissed for three reasons. First, the ADA preempts Capdeville's redhibition claim. Second, even if it were not preempted, the claim fails because redhibition is unique to Louisiana law, and the Contract of Carriage includes a choice-of-law provision requiring application of Texas law. Third, even if it were not preempted and Louisiana law applied, Capdeville's redhibition claim should still be dismissed because he fails to allege a redhibitory defect in a "thing sold."

> **1.    The Airline Deregulation Act preempts Capdeville's redhibition claim.**

Although the inquiry on a motion to dismiss under Rule 12(b)(6) often focuses on whether the plaintiff plausibly alleged the elements of a claim, dismissal is also appropriate when an "affirmative defense appears on the face of the complaint." *SED Holdings, L.L.C. v. TM Prop. Sols., L.L.C.* (*In re 3 Star Props., L.L.C.*), 6 F.4th 595, 604 (5th Cir. 2021). Preemption is one such defense. *See Simmons v. Sabine River Auth. La.*, 732 F.3d 469, 473 (5th Cir. 2013). Here, it is apparent on the face of the complaint that Capdeville's redhibition claim is preempted by the ADA.

---

[20] *See* Complaint ¶ 18 (ECF No. 1, at 4) (omitting the phrase "Following a request by the Customer" from Section 9(a)(1)(ii)).

[21] Although the Customer Service Plan is not a contract and not incorporated into the Contract of Carriage (and thus cannot for the basis of a contract claim), it too refers to the need for a refund "request." **Ex. B**, Customer Service Plan § 5, at 1. Indeed, even Capdeville acknowledges this. *See* Complaint ¶ 22 (ECF No. 1, at 5) ("Paragraph 5 of the Customer Service Commitment further provides that refunds are to be issued within seven business days from the date of a refund request . . . .").

Airline prices, routes, and services are exclusively regulated by federal law. To "'ensure that the States would not undo federal deregulation with regulation of their own,' Congress included [in the ADA] an express preemption provision." *Air Evac EMS, Inc. v. Sullivan*, 8 F.4th 346, 350 (5th Cir. 2021) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992)).

Under the ADA's preemption provision, a State "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). "The Supreme Court has made clear that this express preemption provision 'has a "broad scope"' and 'an "expansive sweep."'" *Sullivan*, 8 F.4th at 350 (quoting *Morales*, 504 U.S. at 383–84). Indeed, as the Supreme Court observed, the term "related to" under the ADA is "much more broadly worded" than other preemption provisions. *Nw., Inc. v. Ginsberg*, 572 U.S. 273, 283 (2014).

For that reason, the ADA preempts not only laws "specifically addressed to the airline industry" but also "laws of general applicability" that have a "significant effect" on airline prices, routes, or services, even if that effect "is only indirect." *Morales*, 504 U.S. at 386–88. If a law has "a connection with, or reference to" airline prices, routes, or services, or if its application would have a "significant effect" on prices, routes, or services, the law is preempted by the ADA. *Sullivan*, 8 F.4th at 351. Causes of action that meet this test, whether arising from statute or common law, are routinely preempted on this basis. *See, e.g.*, *Ginsberg*, 572 U.S. at 287–88 (holding that the ADA preempted claim for breach of implied covenant of good faith and fair dealing); *Witty v. Delta Air Lines, Inc.*, 366 F.3d 380, 383 (5th Cir. 2004) (holding that ADA preempted negligence claim against airline for failure to provide adequate leg room because "requiring more leg room would necessarily reduce the number of seats on the aircraft" and, thus, have an indirect effect on the prices charged).

Here, Capdeville's redhibition claim relates to Southwest's prices, routes, and services. With respect to price, Capdeville asserts that Southwest is required to "return the price of [his] ticket," plus interest, attorneys' fees, and other damages. In addition to the claim's express reference to price, the case law makes clear that state-law claims challenging an airline's ticket refund practices relate to price. *See, e.g.*, *Statland v. Am. Airlines, Inc.*, 998 F.2d 539, 542 (7th Cir. 1993) (finding it "obvious that canceled ticket refunds relate to rates");[22] *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 36 (1st Cir. 2007) (holding that state-law claims seeking refunds were related to airline's "prices" and therefore preempted); *Levey v. Concesionaria Vuela Compania de Aviacion, S.A.P.I. de C.V.*, 529 F. Supp. 3d 856, 864 (N.D. Ill. 2021) ("[T]he ADA preempts state-law claims challenging an airline's ticket refund practices."). Indeed, a state-law-imposed requirement to refund the price of a canceled ticket "would inexorably relate to prices charged by [Southwest]." *Witty*, 366 F.3d at 383. Thus, Capdeville's redhibition claim relates to prices.

His claim also relates to Southwest's routes. Capdeville alleges that he is entitled to relief under the law of redhibition because "[h]is flight was cancelled and there were no alternative Southwest flights to accommodate him."[23] In other words, he contends that Southwest should have offered more flights to his destination so he could have been transported on an alternative flight in the event of a cancellation. Because Capdeville's claim concerns the number of flights flown and where, this claim relates to Southwest's routes. *See United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605, 607–08 (7th Cir. 2000) (holding that tort claims related to airline's routes and were preempted because "they concern which carriers fly to which destinations from which airports").

---

[22] The ADA's preemption provision originally referred to "rates, routes, or services," but Congress amended the statutory language in 1994 to refer to "a price, route, or service." *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 223 & n.1 (1995). Congress intended this amendment "to make no substantive change." *Id.* at 223 n.1; *see also Ginsberg*, 572 U.S. at 284 (describing "rate" as referring to the "price of a particular ticket").

[23] Complaint ¶ 23 (ECF No. 1, at 5).

9

Lastly, Capdeville's redhibition claim relates to Southwest's services. The Fifth Circuit has adopted a broad definition of the term "service" under the ADA. "'Services' generally represent a bargained-for or anticipated provision of labor from one party to another." *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995) (en banc). Elements of the "air carrier service bargain" that fall within the scope of the ADA's preemption clause include "ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself." *Id.* Capdeville's redhibition claim arises from a flight cancellation (i.e., a failure to provide transportation), which directly relates to the provision of "transportation itself." *Id.*; *see also Onoh v. Nw. Airlines, Inc.*, 613 F.3d 596, 599–600 (5th Cir. 2010) (holding that state-law claim arising out of airline's refusal to transport passenger was related to airline's "service" and therefore preempted). Thus, the redhibition claim relates to Southwest's services.

There is only one exception to the ADA's broad preemption provision: "routine breach-of-contract claims . . . with no enlargement or enhancement based on state laws or policies external to the agreement." *Wolens*, 513 U.S. at 232–33. Thus, even when a state-law claim is based on an airline's contract of carriage, the claim is preempted if it "seeks to enlarge the contractual obligations that the parties voluntarily adopt." *Ginsberg*, 572 U.S. at 276.

Here, the *Wolens* exception does not save Capdeville's redhibition claim from preemption. The claim is not based on the express terms of the Contract of Carriage but rather a warranty against hidden defects that state law "implie[s] in every contract of sale unless expressly excluded." *Radalec, Inc. v. Automatic Firing Corp.*, 81 So. 2d 830, 833 (La. 1955); *see also* La. Civ. Code art. 2520. Section 10(c)(2) of the Contract of Carriage expressly excludes implied

10

warranties.[24] Thus, application of redhibition law would not enforce the "contract terms set by the parties themselves," *Wolens*, 513 U.S. at 222; it would do just the opposite.

Put differently, Capdeville seeks "to enlarge his contractual agreement with [Southwest]" using Louisiana's redhibition law. *Ginsberg*, 572 U.S. at 289. To illustrate, he contends that Southwest is liable under the law of redhibition for "return of the price of the ticket when it was paid plus interest from the time paid, the reimbursement of reasonable expenses occasioned by the sale and also for damages and attorney fees."[25] But the Contract of Carriage does not require Southwest to issue refunds every time a flight is canceled; the Contract allows Southwest to issue flight credits in some circumstances.[26] And under no circumstances does the Contract require Southwest to pay interest, damages, or attorneys' fees.[27] Because the remedies that Capdeville seeks are not "confined to [the] contract's terms," *Wolens*, 513 U.S. at 229, Capdeville's redhibition claim does not fit within the exception to ADA preemption.

Facing similar refund-based claims, courts have routinely limited plaintiffs to claims for breach of the express terms of the contracts of carriage and held that the ADA preempted additional state-law claims. In *Melnyk v. Polskie Linie Lotnicze Lot S.A.*, No. 20-6119, 2021 WL 3417949, at *4 (D.N.J. May 26, 2021), for example, the court held that the ADA preempted plaintiff's state-law claim for rescission because the express terms of the contract of carriage did not permit such a remedy. The Court should reach the same result here. Similar to the plaintiff in *Melnyk*, Capdeville has asserted a state-law claim for redhibition in addition to a claim for breach of the express terms of the Contract of Carriage. By relying on state law to obtain rescission, attorneys'

---

[24] **Ex. A**, Contract of Carriage § 10(c)(2), at 54.

[25] Complaint ¶ 45 (ECF No. 1, at 10).

[26] *See generally* **Ex. A**, Contract of Carriage § 4, at 16–21.

[27] *See id.* §§ 4(c), 9(a)(4), at 17–21, 50.

fees, and other damages, Capdeville is seeking "to enlarge the contractual obligations that the parties voluntarily adopted" through external state laws. *Ginsberg*, 572 U.S. at 276.

In sum, Capdeville's redhibition claim is preempted by the ADA and should be dismissed.

### 2. The Texas choice-of-law provision precludes Capdeville's redhibition claim.

Even if it were not preempted by the ADA, Capdeville's redhibition claim should still be dismissed because the choice-of-law provision in the Contract of Carriage precludes that claim. When a contract includes a choice-of-law provision, the provision "is presumed valid until it is proved invalid." *IberiaBank v. Broussard*, 907 F.3d 826, 835 (5th Cir. 2018); *see also Hughes*, 961 F.3d at 988 (enforcing Texas choice-of-law provision in Southwest's Contract of Carriage). The Contract of Carriage here includes a broad choice-of-law provision that designates Texas law as controlling.[28] Accordingly, Texas law governs this action.

Redhibition is "a form of products liability unique to Louisiana law." *Hollybrook Cottonseed Processing, L.L.C., v. Am. Guar. & Liab. Ins. Co.*, 662 F. App'x 282, 283 (5th Cir. 2016). Redhibition is "not recognized in Texas." *Dartez v. United Homes, Inc.*, No. 15- 1749, 2015 WL 5159069, at *3 (W.D. La. Sept. 2, 2015) (citing *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 498 (Tex. 2008)). For that reason, a choice-of-law provision requiring application of Texas law, or any other State's law for that matter, will necessarily preclude a claim for redhibition. *See Axis Oilfield Rentals, LLC v. Mining, Rock, Excavation & Constr., LLC*, 166 F. Supp. 3d 684, 694 (E.D. La. 2016) (Barbier, J.) (holding that plaintiff's "Louisiana redhibition claims [were] precluded by the valid choice-of-law provision," which required application of Colorado law); *Bayouland Bowhunters & Outfitters Inc. v. Bowtech Inc.*, No. 19-00295, 2020 WL 764244, at *4

---

[28] *See* **Ex. A**, Contract of Carriage § 10(c)(1), at 54 ("Any and all matters arising out of or relating to this *Contract of Carriage* and/or the subject matter hereof shall be governed by, construed, and enforced in accordance with the laws of the United States of America and, to the extent not preempted by federal law, the laws of the State of Texas without regard to conflict of law principles, regardless of the legal theory upon which such matter is asserted.").

(W.D. La. Feb. 14, 2020) (holding that "the application of Oregon law will necessarily eliminate [plaintiff's] claim for redhibition"); *Hollybrook Cottonseed Processing, LLC v. Carver, Inc.*, No. 09-0750, 2010 WL 1416781, at *9 (W.D. La. Apr. 1, 2010) (holding that plaintiff's redhibition claims were "precluded by the contract's choice of law provision"). Thus, the Texas choice-of-law provision in the Contract of Carriage precludes Capdeville's redhibition claim.

### 3. Capdeville fails to plausibly allege a redhibitory defect in a "thing sold."

Even if it were not preempted and Louisiana law applied, Capdeville's redhibition claim should still be dismissed because Capdeville fails to state a plausible claim for redhibition. Redhibition is the rescission of a sale "on account of some vice or defect in the thing sold which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it had he known of the vice." *Alston v. Fleetwood Motor Homes of Ind. Inc.*, 480 F.3d 695, 6P99 (5th Cir. 2007). To state a claim for redhibition, then, Capdeville must allege a "defect" in a "thing sold." La. Civ. Code art. 2520.

For a redhibitory defect to exist in a "thing sold," the underlying transaction must be a "sale." *Gulf States Utils. Co. v. Ecodyne Corp.*, 635 F.2d 517, 520 (5th Cir. 1981). "[T]here can be no redhibition in the absence of a contract of sale." *XL Specialty Ins. Co. v. Bollinger Shipyards Lockport LLC*, 76 F. App'x 536, 541 (5th Cir. 2003).

Importantly, a contract of sale is one "whereby a person transfers ownership of a thing to another for a price in money." La. Civ. Code art. 2349. Conversely, the laws of redhibition do not apply to contracts for service. *Coleman v. Sears Home Improvement Prod., Inc.*, No. 16-2537, 2017 WL 1089580, at *7 (E.D. La. Mar. 21, 2017) (Brown, C.J.); *see also, e.g.*, *Airco Refrigeration Serv., Inc. v. Fink*, 134 So. 2d 880, 883 (La. 1961) (finding redhibition inapplicable because contract to transport and install air-conditioning unit was not a "sale"); *Martin v. Earl J. Rome, Jr., D.D.S.*, 486 So. 2d 213, 215–16 (La. App. 1 Cir. 1986) (finding redhibition inapplicable

13

because contract for dental services was not a "sale"); *Seymore v. La. Soil Stabilization Co.*, 381 So. 2d 571, 573 (La. App. 2d Cir. 1980) (finding redhibition inapplicable because contract to stabilize soil under a home was not a "sale").

Accordingly, the Contract of Carriage between Capdeville and Southwest cannot be characterized as a contract of "sale" subject to the laws of redhibition. Capdeville does not allege that Southwest agreed to transfer ownership of any property to him; he alleges that he entered into a contract with Southwest "for the provision of air travel in exchange for payment."[29] This is a contract for service. *Cf. Miguez & Leckband (A L. P'ship) v. Holston's Ambulance Serv., Inc.*, 614 So. 2d 150, 152 (La. App. 3 Cir. 1993) (holding that agreements to provide ambulance services to patient were "contracts for service"). Without a contractual relationship of sale with Southwest, Capdeville's redhibition claim fails.

## CONCLUSION

Capdeville's breach-of-contract claim is deficient because the Contract of Carriage expressly allows Southwest to provide a flight credit when a flight is cancelled, and Capdeville fails to plausibly allege satisfaction of a mandatory condition precedent to obtaining a refund: that he requested one. Capdeville also fails to state a claim for redhibition under Louisiana law because it is (1) preempted by the Airline Deregulation Act of 1978 (ADA); (2) precluded by a valid choice-of-law provision; and (3) deficient as a matter of law because the underlying transaction was not a "sale" under the Louisiana Civil Code.

For these reasons, the Court should grant this motion, dismiss Capdeville's redhibition claim with prejudice, and either dismiss Capdeville's breach-of-contract claim or order Capdeville to cure these pleading deficiencies.

---

[29] Complaint ¶ 37 (ECF No. 1, at 9).

4892-6238-4479 v3

Respectfully submitted,

s/Jeffrey J. Gelpi
Michael R. Phillips (#21020)
R. Devin Ricci (#34724)
Jeffrey J. Gelpi (#37130)
**KEAN MILLER LLP**
909 Poydras Street, Suite 3600
New Orleans, Louisiana 70112
Telephone: (504) 585-3050
mike.phillips@keanmiller.com
devin.ricci@keanmiller.com
jeff.gelpi@keanmiller.com

Karli Glascock Johnson (#26304)
**KEAN MILLER LLP**
400 Convention Street, Suite 700
P. O. Box 3513 (70821-3513)
Baton Rouge, Louisiana 70802
Telephone: (225) 387-0999
karli.johnson@keanmiller.com

*__Attorneys for Southwest Airlines Co.__*

15